# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| MARSHAUN BOYKIN, | ) | |
| | ) | |
| Plaintiff, | ) | No. 12 C 04447 |
| | ) | |
| v. | ) | |
| | ) | Judge Edmond E. Chang |
| THOMAS DART, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Marshaun Boykin was a detainee at the Cook County Jail. He brings this suit under 42 U.S.C. § 1983 against Cook County Sheriff Thomas Dart, Dr. Jonathan Howard, Dr. David Kelner, and Dr. Michael Moreno.[1] *See* R. 13, First Am. Compl. Boykin alleges that Defendants were deliberately indifferent to his medical needs in violation of his rights under the Fourteenth Amendment. *Id.* ¶¶ 27-30. Defendants now move for summary judgment, arguing that Boykin failed to exhaust his administrative remedies before filing suit as required by the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e. *See* R. 58, Defs.' Mot. Summ. J. For the reasons discussed below, Defendants' motion is granted.

---

[1]This Court has subject matter jurisdiction under 28 U.S.C. § 1331. Citation to the docket is "R." followed by the entry number and, when necessary, the page/paragraph number. Citations to the Defendants' Local Rule 56.1 Statements of Fact is "DSOF" [R. 59] followed by a paragraph number.

## I. Background

In deciding Defendants' motion for summary judgment, the Court views the evidence in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Marshaun Boykin has been an inmate in the Cook County Jail since May 2011. First Am. Compl. ¶ 11.[2] Boykin suffers from depression and bipolar disorder and has been prescribed medication for these diagnoses. *Id.* ¶¶ 11-12. In late 2011, Boykin attempted suicide. *Id.* ¶ 13. He was scheduled for a psychiatric evaluation, during which he claims he was refused treatment by Defendant Dr. Jonathan Howard, a psychiatrist at Cook County Jail. *Id.* ¶¶ 8, 13. A short time later, Boykin expressed thoughts of suicide to Cook County correctional officers. *Id.* ¶ 14. Boykin alleges that these officers "took no action." *Id.* He attempted suicide again and was given another psychiatric evaluation. *Id.* Boykin claims that at his second evaluation, Howard did not take his condition seriously and misdiagnosed Boykin with antisocial personality disorder and malingering. *Id.* Boykin alleges that Defendants Dr. David Kelner and Dr. Michael Moreno, both psychiatrists at the Cook County Jail, also denied Boykin psychiatric treatment based on this misdiagnosis. *Id.* ¶¶ 9-10, 14.

Boykin next told Cook County correctional officers that he had suicidal thoughts in April 2012. First Am. Compl. ¶ 15. He claims that they again did nothing. *Id.* Boykin attempted suicide a third time. *Id.* After this attempt, Boykin was visited by a mental health specialist who scheduled him for another psychiatric

---

[2] After Boykin was convicted in Cook County Circuit Court, he was transferred out of Cook County Jail to the Illinois Department of Corrections. DSOF ¶ 2.

evaluation. *Id.* ¶ 16. Boykin claims that the appointment was cancelled. *Id.* The following month, Boykin claims he again reported thoughts of suicide to Cook County correctional officers, who did nothing. *Id.* ¶ 17. Boykin attempted suicide for the fourth time. *Id.* He claims that he was again denied medical assistance and sent back into the general population. *Id.*

Cook County Jail has established a grievance procedure to address inmate complaints. DSOF ¶ 11. The procedure requires an inmate to file a written grievance within fifteen days of the event giving rise to the complaint. *Id.* ¶ 12; R. 59-4, Defs.' Exh. D, Mueller Aff. Exh. 1, Sheriff's Order 11.14.5.0 at 2. Within 48 hours of a grievance being filed, a Correctional Rehabilitation Worker (CRW) must assign the grievance a case number and enter it into the record-keeping system. DSOF ¶ 17; Defs.' Exh. D, Mueller Aff. Exh. 1, Sheriff's Order 11.14.5.0 at 2. If a grievance relates to healthcare or medical treatment, it is forwarded to Cermak Health Services, the hospital at the Cook County Department of Corrections. DSOF ¶¶ 3-5, 18. All grievances must be resolved in "a timely fashion (not to exceed 30 days from the date the grievance was filed)." Defs.' Exh. D, Mueller Aff. Exh. 1, Sheriff's Order 11.14.5.0 at 3. If a grievance cannot be resolved within 30 days, the CRW must notify the both the detainee and the divisional Superintendent. *Id.* An inmate may appeal a grievance decision within five working days of his receipt of that decision. *Id.* The Administrator of Program Services must review the grievance appeal within ten days and reply to the inmate in writing. *Id.*

Boykin filed several grievances related to his medical care at Cook County Jail. DSOF ¶¶ 23-30; R. 76, Pl.'s Resp. Br. at 1-2. On May 8, 2012, Boykin filed a grievance complaining that he was not receiving adequate medical attention. DSOF ¶ 26; R. 59-3, Defs.' Exh. C, Grievances at Boykin_00004-05. This grievance was assigned a tracking number and forwarded to Cermak Health Services. DSOF ¶ 26. The Cermak Health Services staff wrote a response to the grievance on June 4, 2012. *Id.*; Defs.' Exh. C, Grievances at Boykin_00011. Boykin received the response on July 12, 2012 and appealed it the same day. DSOF ¶ 26. Boykin submitted another grievance alleging lack of medical attention on May 22, 2012. *Id.* ¶ 27; Defs.' Exh. C, Grievances at Boykin_00006. It was forwarded to Cermak Health Services, which responded on June 25, 2012. DSOF ¶ 27; Defs.' Exh. C, Grievances at Boykin_00013. Boykin received the response on July 15, 2012, and he appealed it. DSOF ¶ 27. Boykin also submitted a grievance regarding his medical care on May 29, 2012. *Id.* ¶ 28; Defs.' Exh. C, Grievances at Boykin_00007. Cermak Health Services responded on June 26, 2013, and the response was delivered to Boykin on July 12, 2012. DSOF ¶ 28; Defs.' Exh. C, Grievances at Boykin_00012. Again, Boykin appealed the response on the same day. DSOF ¶28. Boykin submitted his next grievance regarding his medical treatment on June 12, 2012. DSOF ¶ 29; Defs.' Exh. C, Grievances at Boykin_00008. Cermak Health Services responded on August 3, 2012, and Boykin received the response on August 16, 2012. DSOF ¶ 29; Defs.' Exh. C, Grievances at Boykin_00014. Boykin's final grievance regarding medical treatment was filed on August 4, 2012. DSOF ¶ 30; Defs.' Exh. C, Grievances at

Boykin_00010. Cermak Health Services responded on September 7, 2012, and Boykin received the response on September 18, 2012. DSOF ¶ 30; Defs.' Exh. C, Grievances at Boykin_00015.

Boykin signed his complaint for this lawsuit on May 11, 2012. *See* R. 8, Compl. at 6. At some point between May 11, 2012 and June 5, 2012, Boykin mailed his complaint to the Clerk of the United States District Court for the Northern District of Illinois. *See* Docket Entry 1 for 12-cv-04447 (noting that the complaint was postmarked June 5, 2012). On June 7, 2012, the Clerk of the Court received Boykin's complaint. *See* Compl. at 1 (showing a "received" stamp of June 7, 2012). Boykin moved to proceed *in forma pauperis*. *See* R. 3, Application for Leave to Proceed *In Forma Pauperis*. Boykin's motion was granted, and the complaint was marked as filed on June 21, 2012. *See* R. 5, June 11, 2012 Minute Entry; Compl. at 1 (showing a "filed" stamp of June 21, 2012). Defendants now move for summary judgment on the issue of exhaustion under the PLRA. *See* Defs.' Mot. Summ. J.

## II. Legal Standard

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In evaluating summary judgment motions, courts must view the facts and draw reasonable inferences in the light most favorable to the non-moving party. *Scott v. Harris*, 550

U.S. 372, 378 (2007). The Court may not weigh conflicting evidence or make credibility determinations, *Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 629 F.3d 697, 704 (7th Cir. 2011), and must consider only competent evidence of a type otherwise admissible at trial, *Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009). The party seeking summary judgment has the initial burden of showing that there is no genuine dispute and that they are entitled to judgment as a matter of law. *Carmichael v. Village of Palatine*, 605 F.3d 451, 460 (7th Cir. 2010); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Wheeler v. Lawson*, 539 F.3d 629, 634 (7th Cir. 2008). If this burden is met, the adverse party must then "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256.

### III. Analysis

### A. Grievances in the Record

A plaintiff alleging a violation of his civil rights under § 1983 is not typically required to exhaust administrative remedies before filing suit. *See Patsy v. Bd. of Regents of Fla.*, 457 U.S. 496, 516 (1982). Congress has created an exception to this general rule for inmates alleging constitutional deprivations concerning prison conditions. *See Porter v. Nussle*, 534 U.S. 516, 523 (2002). Under the PLRA, "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This is a strict requirement. To exhaust administrative remedies, prisoners must "file complaints and appeals in the place,

6

and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). "This means the prisoner must give the prison's grievance system a fair opportunity to consider the grievance, which requires the complaining prisoner to comply with the system's critical procedural rules." *Fluker v. Cnty. of Kankakee*, 741 F.3d 787, 791 (7th Cir. 2013) (quoting *Woodford v. Ngo*, 548 U.S. 81, 95 (2006)) (internal quotation marks and alterations omitted). If a prisoner fails to use the administrative process properly, his claim may be indefinitely unexhausted. *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006).

Boykin filed several grievances related to his claims of deliberate indifference to medical needs, and the parties cite to the same set of grievances in their summary judgment filings. *See* Defs.' Exh. C, Grievances; Pl.'s Exhs. 6, 10. Boykin's earliest-filed grievance related to his medical treatment at Cook County Jail was filed on May 8, 2012.[3] Defs.' Exh. C, Grievances at Boykin_00004-05; Pl.'s Exh. 10 at

---

[3] Both parties also include two grievances filed by Boykin prior to the May 8, 2012 grievance. *See* Defs.' Exh. C, Grievances at Boykin_00001-03; Pl.'s Exh. 6 at 1; Pl.'s Exh. 10 at 1-2. Neither of these grievances (which were processed as requests rather than grievances) relate to the claims alleged in Boykin's complaint. The first request was filed on January 12, 2012. Defs.' Exh. C, Grievances at Boykin_00001. In this request, Boykin asks for copies of all grievances that he had submitted. *Id.* The request does not mention Boykin's medical treatment. *Id.* The second request was filed on May 4, 2012. *Id.* at Boykin_00003. In this request, Boykin asks to receive mental health incident reports and copies of his mental health records. *Id.* Boykin states in the request form that he wants these documents so that "when I go home I can get my medication in the world." *Id.* He does not complain about his medical treatment in this request. *Id.* Neither of these requests addresses the deliberate indifference to medical need that Boykin alleges in his complaint. *See* First Am. Compl. ¶¶ 27-30. The purpose of the exhaustion requirement is to give prison officials an opportunity to correct perceived problems in advance of litigation. *See Cannon v. Washington*, 418 F.3d 714, 719 (7th Cir. 2005). Requests and grievances unrelated to the claim ultimately advanced in litigation do not, therefore, have any effect on the exhaustion requirement of the PLRA. *Cf. Turley v. Rednour*, 729 F.3d 645, 650 (7th Cir. 2013) (stating that exhaustion requires that "a prison has received notice of, and an opportunity to correct, a problem").

7

7-9. The response to this grievance was written on June 4, 2012, but Boykin did not receive the response until July 12, 2012. Defs.' Exh. C, Grievances at Boykin_00011. Boykin argues that the Cook County Jail grievance procedure was unavailable to him because the prison officials did not respond to his grievances in a timely fashion. *See* Pl.'s Br. at 4. It is true that the PLRA only requires a prisoner to exhaust "such administrative remedies as are available" to him. 42 U.S.C. § 1997e(a). Prison officials' failure to respond to a prisoner's claim may render administrative remedies unavailable. *See Brengettcy v. Horton*, 423 F.3d 674, 682 (7th Cir. 2005) (noting that failure to respond to grievances, particularly because the Cook County Jail policy "does not instruct a prisoner on what he is to do when the [Cook County Department of Corrections] fails to respond to his grievance," is sufficient to render administrative remedies unavailable). The PLRA does not "permit prison officials to exploit the exhaustion requirement through indefinite delay in responding to grievances." *Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002) (internal quotation marks and alterations omitted).

Although the response to Boykin's grievance was late, Boykin filed his suit before allowing the administrative process to run its course, and thus failed to exhaust under the PLRA. Critically, prisoners must completely exhaust administrative remedies *before* bringing a § 1983 suit. *See Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004) ("[E]xhaustion must precede litigation."). Because the exhaustion requirement serves "to alert prison officials to perceived problems and to enable them to take corrective action without first incurring the hassle and expense

8

of litigation," it would defeat the requirement's purpose to ask the prison "to address issues that are now the subject of pending litigation." *Cannon v. Washington*, 418 F.3d 714, 719 (7th Cir. 2005). Even if a prisoner exhausts his remedies while the suit is pending, the suit must be dismissed. *Ford*, 362 F.3d at 401 ("[I]f the prisoner does exhaust, but files suit early, then dismissal of the premature action may be followed by a new suit that unquestionably post-dates the administrative decision."); *Perez v. Wis. Dep't of Corrections*, 182 F.3d 532, 535 (7th Cir. 1999) ("[T]he district court lacks discretion to resolve the claim on the merits, even if the prisoner exhausts intra-prison remedies before judgment.").

The Cook County Jail grievance procedure allows prison officials 30 days from the date a grievance was filed to respond to the prisoner's complaint. Defs.' Exh. D, Mueller Aff. Exh. 1, Sheriff's Order 11.14.5.0 at 2. If the grievance cannot be resolved in 30 days, the CRW must notify both the inmate and the divisional Superintendent. *Id.* Boykin's earliest-filed grievance was filed May 8, 2012.[4] He "brought" this lawsuit for the purposes of the PLRA when he mailed his complaint to the Clerk of the United States District Court for the Northern District of Illinois. *See Ford*, 362 F.3d at 398 ("[The plaintiff] thought that mailing the complaint to the court was enough to bring suit; we hold that, for purposes of § 1997e(a), it was."). Although the record is unclear as to precisely when Boykin mailed his complaint, it could have been no later than June 5, 2012, when the envelope was postmarked. *See* Docket Entry 1 for 12-cv-04447 (noting that the complaint was postmarked June 5,

---

[4] If Boykin filed suit too early to properly exhaust the earliest-filed grievance related to his medical treatment, then he will also have filed too early to exhaust the later-filed grievances.

2012). June 5, 2012 is only 28 days after May 8, 2012, when Boykin filed his earliest grievance related to the events alleged in his complaint. Boykin therefore brought his lawsuit before giving the administrative procedures a full opportunity to address his grievance. As of June 5, 2012, the grievance procedure was operating as it was supposed to. An inmate filed a grievance, and was awaiting a response within the timeframe set forth in the grievance procedure. Even if the administrative procedures were later made unavailable,[5] they were not unavailable when Boykin filed his lawsuit. The PLRA is clear that "if administrative remedies are available,

---

[5] It is not immediately clear that administrative remedies would have become "unavailable" to Boykin if he had received no response on the 31st day after he filed his grievance. The PLRA does not allow prison officials to "exploit the exhaustion requirement through indefinite delay in responding to grievances," *Lewis*, 300 F.3d at 833 (internal quotation marks and alterations omitted), but it is not clear what, if anything, a prisoner must do if he does not receive a timely response. Often, when courts have found that administrative remedies were unavailable due to failure to respond by prison officials, the inmate had filed several unsuccessful grievances and asked about the failure to respond. *See Dole*, 438 F.3d at 807-13; *Brengettcy*, 423 F.3d at 682-83. In *Brengettcy*, administrative remedies were unavailable because the prisoner had "done all that is reasonable to exhaust his administrative remedies." *Brengettcy*, 423 F.3d at 682. Although the prisoner in *Brengettcy* had filed several grievances and followed up on his unanswered ones, it is not clear that the Seventh Circuit's holding rested on those grounds. Based on the same administrative procedure at issue here, the Seventh Circuit noted that "the policy does not instruct a prisoner on what he is to do when the CCDOC fails to respond to his grievance and there is no decision to appeal," and determined that the defendant was not entitled to judgment on exhaustion grounds. *Id.* It is not clear what role, if any, the number of unanswered grievances or a prisoner's follow up should play in the unavailability of administrative remedies. *Cf. Dixon v. Page*, 291 F.3d 485, 490 (7th Cir. 2002) (holding that it is "problematic" to require a prisoner to file a second grievance to compel the prison to give him the relief he was promised in a response to his first grievance, but ultimately affirming dismissal on exhaustion grounds). Several courts, distinguishing *Brengettcy*, have found that "[s]imply submitting a grievance and not receiving a response is insufficient to establish that the grievance process is unavailable." *Goldsmith v. Zolecki*, No. 12 C 3965, 2013 WL 5699302, at *6 (N.D. Ill. Oct. 18, 2013); *see also Taylor v. Cook Cnty.*, No. 11 C 7427, 2013 WL 2285806, at *4 (N.D. Ill. May 23, 2013); *Logan v. Emerson*, No. 10 C 4418, 2012 WL 3292829, at *5 (N.D. Ill. Aug. 9, 2012); *Nesbitt v. Villanueva*, No. 09 C 5299, 2010 WL 4932423, at *3 (N.D. Ill. Nov. 29, 2010). Because Boykin filed his lawsuit before the administrative remedies may have become unavailable, however, it is not necessary to decide this question.

10

the prisoner must exhaust them." *Twitty v. McCoskey*, 226 Fed. App'x 594, 596 (7th Cir. 2007). Boykin started the administrative grievance process and then abandoned it before it could work. At the time he filed his complaint, the administrative process was still available to him, and he had not complied with the critical procedural rules of that process. It makes no difference that he later exhausted by appealing. *See Ford*, 362 F.3d at 398-401. Boykin failed to exhaust his administrative remedies under § 1997e(a).

## B. Additional Grievances

Boykin brought his § 1983 suit too early to properly exhaust the earliest-filed grievance in the record before the Court, and his later-filed grievances are similarly unexhausted. But Boykin's summary judgment filings seem to suggest that he filed other grievances related to his medical care at Cook County Jail. *See* Pl.'s Resp. Br. at 2 (stating that "Plaintiff has filed numerous Grievances in an attempt to get the medial treatment he need[s] for his condition and they went unanswered" and alleging that the grievance forms were lost when Boykin changed facilities). As a preliminary matter, it is not clear if Boykin is, in fact, referring to different grievances than those already in the record before the Court. In support of his statement that he filed numerous grievances, he cites to the grievances already before the court (the grievances that he did not exhaust). *See* Pl.'s Br. at 2, 7 (citing to Plaintiff's Exhibits 6 and 10). He also alleges, however, that the prison failed to return his copies of grievances to him when he transferred to a different facility. *See id.* This suggests that Boykin believes there are grievances that are not before the

11

Court because they were lost when Boykin moved from one facility to another. *See id.*; *see also* First Am. Compl. ¶ 19 (claiming that Boykin filed "approximately fifty grievances" related to his medical treatment).

If Boykin is claiming that he filed more grievances related to his medical care and that those grievances went unanswered, these claims cannot be considered in evaluating the motion for summary judgment. When filing for summary judgment, Defendants filed a statement of uncontested facts accompanied by citations to supporting evidence as required by Local Rule 56.1. *See* DSOF; N.D. Ill. L.R. 56.1(a). Under Local Rule 56.1, Boykin was required to respond to each of Defendants' stated facts, "including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon," and, if Boykin wanted to present any additional facts, he was required to submit his own statement accompanied by citations to supporting evidence. N.D. Ill. L.R. 56.1(b)(3). Boykin failed to do so. The Court is entitled to require strict compliance with Local Rule 56.1, even for *pro se* litigants. *See Cady v. Sheahan*, 467 F.3d 1057, 1061 (7th Cir. 2006); *Smith v. Lamz*, 321 F.3d 680, 682-83 (7th Cir. 2003). When the nonmovant fails to comply with the requirements of Local Rule 56.1, the moving party's facts may be deemed admitted. *See* N.D. Ill. L.R. 56.1(b)(3)(C) ("All material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party."); *Smith*, 321 F.3d at 683.

In their Local Rule 56.1 statement of uncontested facts, Defendants assert, with proper discovery-record support, that the grievances in the record before the Court are the result of a thorough search of the grievance records of the Department of Corrections. DSOF ¶ 22-23. This search turned up several grievances relating to Boykin's medical treatment, which are before the Court. *Id.* Defendants state that grievance documents are kept in the regular course of business and that the grievances before the Court are all the grievances filed by Boykin related to his medical treatment that are in Cook County Jail's records. *Id.* ¶ 22-23, 32. Because Boykin failed to respond to these statements of fact, they are deemed admitted. Based on these undisputed facts, the Court holds that the grievances before the Court are all of the grievances that Boykin filed related to his medical treatment. There is, therefore, no genuine dispute of material fact as to the existence of earlier-filed grievances related to Boykin's claims for deliberate indifference to medical needs.

This situation exemplifies the reason that courts require strict compliance with Local Rule 56.1. "These rules assist the court by organizing the evidence, identifying undisputed facts, and demonstrating precisely how each side proposed to prove a disputed fact with admissible evidence." *Bordelon v. Chicago School Reform Bd. of Trustees*, 233 F.3d 524, 527 (7th Cir. 2000) (internal quotation marks omitted). Boykin's allegations that he filed more grievances (if that is, in fact, his argument) are vague, conclusory, and lack record support. *See* Pl.'s Resp. Br. at 2-3. His only citations are to the grievances already before the Court and a separate

lawsuit in which he alleges that he was deprived of his property, including copies of grievances (he does not specify which). *Id.* (citing to Plaintiff's Exhibits 7 and 10). Based on Boykin's filing, it is difficult to tell if there is actually a dispute of material fact, and if there is, how Boykin proposes to prove that fact with admissible evidence. Boykin also describes grievances unrelated to his medical treatment as "attempt[s] to get the medical treatment he need[s]." *Id.*; Pl.'s Exhs. 6, 10 (including Boykin's requests of January 12, 2012 and May 4, 2012, neither of which address the claims at issue in this lawsuit). Boykin's overly expansive conception of which grievances are really related to the claims in his § 1983 suit further demonstrates the need for the compliance with the Local Rule. Boykin's vague allegations leave the Court completely in the dark as to the content of any earlier grievances. If Boykin had complied with Local Rule 56.1, he would have had to go through each grievance, one by one, to recount (or at least summarize) what the grievance had said, the approximate date on which it was filed, and what, if any, response he received (to the best of his memory). Even without copies of the grievances, compliance with the Local Rule would have given the Court significantly more to go on in determining whether there was a genuine dispute of material fact.

Although the Court is entitled to demand strict compliance with Local Rule 56.1, it ordinarily affords *pro se* plaintiffs significant leeway in responding to summary judgment filings. In this case, however, Boykin's *pro se* status is the result of his own unreasonable behavior. The Court specifically recruited extraordinarily able counsel to represent Boykin at the outset of this case, given the concern over

Boykin's purported suicide attempts. *See* June 11, 2012 Minute Entry (appointing Daniel Rubinstein of Winston & Strawn to represent Boykin). After counsel and his team spent many hours representing Boykin and immediately before Defendants filed their motion for summary judgment, Boykin asked the Court to relieve his pro bono counsel. *See* R. 57, Mar. 1, 2014 Letter from Boykin. After an *ex parte* hearing (*ex parte* because it involved attorney-client communications), this Court relieved Winston & Strawn from the representation. R. 66, Mar. 26, 2014 Minute Entry. The appointed attorneys worked admirably on Boykin's behalf, and Boykin's belief that they were not fulfilling their professional duties was incorrect and unreasonable. *Id.* Because Boykin had behaved unreasonably in dealing with his appointed counsel, this Court decided that no new counsel would be appointed. *Id.* Because Boykin was newly *pro se*, he was provided with the Local Rule 56.2 notice to *pro se* litigants, detailing the requirements of Local Rule 56.1. *See* R. 65, Rule 56.2 Motion. Boykin was also given nearly four months to respond to the summary judgment motion. *See* Mar. 26, 2014 Minute Entry. Boykin was given ample opportunity both to be represented by counsel and to comply with Local Rule 56.1. The Court, therefore, will not construe unsupported, vague allegations that *might* suggest the existence of earlier-filed grievances as creating a genuine issue of material fact.

### C. Emergency Grievance Procedures

Boykin also argues that he was entitled to a faster response to the grievances on the record because emergency grievance procedures require a response within 48 hours of filing the grievance. *See* Pl.'s Resp. Br. at 5-6. None of the grievances before

15

the Court are marked as emergency grievances. *See* Defs.' Exh. C, Grievances; Pl.'s Exhs. 6, 10. Boykin argues that these grievances should have been marked as emergencies because they concerned an inmate's imminent suicide, which involves "an immediate threat to the welfare of safety of a detainee." Pl.'s Resp. Br. at 5; Defs.' Exh. D, Mueller Aff. Exh. 1, Sheriff's Order 11.14.5.0 at 3. Under the Cook County Jail grievance policy, however, the *detainee* initially determines if the grievance is an emergency. Defs.' Exh. D, Mueller Aff. Exh. 1, Sheriff's Order 11.14.5.0 at 3 ("If a detainee deems that the grievance is an emergency, the supervising Correctional Officer assigned to the living unit, will contact a CRW, or in the CRW's absence, the Shift Commander."). The CRW or Shift Commander will then evaluate whether "the issue raised is an emergency." *Id.* Boykin does not allege that he initially filed the grievances in the record as emergency grievances. Nor does he cite to any record evidence suggesting that he asked that these grievances be classified as emergency grievances or that any prison officials denied that request. He simply states that his grievances should have been processed as emergencies because of their content. If Boykin wanted his grievances to be processed as emergencies, the administrative process requires that he classify them as such. *Id.* at 3-4. The grievances before the Court were not emergencies, and prison officials therefore had 30 days to respond. Because Boykin did not wait 30 days before filing suit, he did not exhaust his remedies as required by § 1997e.

## IV. Conclusion

For the reasons discussed above, Defendants' motion for summary judgment is granted. This is a dismissal without prejudice. *See Ford,* 362 F.3d at 401 (holding that "*all* dismissals under § 1997e(a) should be without prejudice" even if "the statute of limitations might provide a good defense" upon refiling). But this is a final, appealable order. *See id.* (citing *Larkin v. Galloway*, 266 F.3d 718, 721 (7th Cir. 2001)).

ENTERED:

    s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: November 4, 2014